UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| SEAN-LYONS JOHNSON BENE,<br><br>    Plaintiff,<br><br>    v.<br><br>WELLS FARGO, et al.,<br><br>    Defendants. | Case No. 22-cv-06782-LB<br><br>**ORDER SCREENING COMPLAINT WITH LEAVE TO AMEND**<br><br>Re: ECF No. 1 |

## INTRODUCTION

The plaintiff, who represents himself and is proceeding in forma pauperis, sued Wells Fargo and four of its employees at a branch in San Leandro after they closed his checking account without notice and, on another occasion, required him to provide identifying information that was already in their system, allegedly in violation of federal statutes addressing consumer privacy and protection.[1] Before authorizing the U.S. Marshal to serve the complaint, the court must screen it for minimal legal viability. 28 U.S.C. § 1915(e)(2)(B).

Neither theory of liability establishes a federal claim. First, the privacy claim — predicated on information in the bank's system — is based on two statutes that do not apply: one is a criminal

---

[1] Compl. – ECF No. 1 at 3–6. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

ORDER – No. 22-cv-06782-LB

statute that does not create a private right of action, and the second is a statute that governs federal agencies. Second, the closure-without-notice claim is predicated on the Consumer Credit Protection Act. The Act does not prohibit what happened here: the bank closed an inactive account according to the account agreement. The plaintiff has not plausibly pleaded a violation of a federal statute. The court thus lacks subject-matter jurisdiction.

The court notifies the plaintiff of these deficiencies so that he can try to cure them in an amended complaint. The deadline is August 1, 2023. If he does not file an amended complaint, the court may recommend dismissal of the complaint.

## STATEMENT

The defendants are Wells Fargo and four employees at its branch in San Leandro: Ashley Corato, Cassandra Cabrera, Marisol Guzman, and Minxi Chen. Corato and Cabrera are branch managers.[2]

On September 3, 2020, the plaintiff "appeared before Banker Marisol Guzman" to "open a personal account ending in 6328." On February 2, 2022, he made an appointment to set up a trust account for his trust (called Lyon Stone Trust) and learned for the first time that Wells Fargo had closed his 6328 account for "non-activity." Wells Fargo did not notify the plaintiff that it was closing his account or provide "proof of non-activities pertaining to this account."[3]

The plaintiff refers to the bank's terms of service: "Bank reserves the right to modify or cancel the service at any time, in its sole discretion, if you have not complied with your obligations under these terms." He alleges that he did not breach his obligations under this four-page contract. He never received notice of bounced checks or an overdraft notification. He reported this to banker Minxi Chen, who asked if he wanted to file a claim, and he said yes. She refused to open a trust account until the plaintiff reopened the closed account. As part of that process, she asked the plaintiff for his "primary identification" and his Social Security number, even though they were

---

[2] *Id.* at 2.

[3] *Id.* at 3–4 (¶¶ 1–2). The plaintiff alleges February 2, 2021, not 2022, but the context suggests 2022.

ORDER – No. 22-cv-06782-LB           2

already in the system. This embarrassed the plaintiff. He gave Ms. Chen the "Wells Fargo institutional Financial Visa identification card ending in [blacked-out number] with expiration date 10/24 with the plaintiff's name in all caps[,] issued by [the] Wells Fargo institution under FDIC regulations."[4]

On February 5, 2022, "LYON STONE TRUST assumed the responsibilities of fiduciary and trusteeship for the affairs of" the plaintiff. That day, the plaintiff sent Wells Fargo "a registered true bill for the amount of $32,400,000.00, which is now in default for the violations/injuries [that the plaintiff suffered] on 02/03/2022" at Wells Fargo. He sent this information to the IRS. He also sent a formal complaint to the Consumer Financial Protection Bureau in a letter dated March 24, 2022.[5]

On April 6, 2022, Wells Fargo sent the plaintiff a letter saying that the $5 monthly service fee to the account left his balance at –$2.24. The account agreement provided that accounts with a zero balance may be closed without prior notice. The plaintiff alleges that "[c]learly there [are] two different instructions." The contract he received at Wells Fargo with rules of termination "doesn't state what the Consumer deposit Account Agreement states, and in their investigation it reveals how this falls under the Fair Credit Bureau Act's jurisdiction." The plaintiff contends that the Fair Credit and Charge Card Disclosure Act of 1988 requires companies and financial institutions to disclose certain information when they issue a new credit or charge card.[6]

The plaintiff reiterates that after two months, Wells Fargo closed the account without sending notice and without allowing the opportunity to cure. He cites the Truth in Lending Act and the Consumer Credit Protection Act. He contends that credit-card companies must provide consistent payment deadlines. He suggests that to close the account, Wells Fargo needed his written or verbal stipulation. (His actual words are, "Nor was this stipulated in written or verbal form to the plaintiff."). By these acts, Wells Fargo allegedly abused its authority. (He cites 41 U.S.C.

---

[4] *Id.* at 4–5 (¶¶ 3–6).
[5] *Id.* at 5.
[6] *Id.* at 5–6 (some spelling errors cleaned up).

§ 4712(g), which is a statute providing whistleblower protection to employees of federal contractors and which defines "abuse of authority.")[7]

The plaintiff attaches documents to his complaint, which the court considers under the incorporation-by-reference doctrine to the extent that they are referenced in the complaint: (1) a "Lyon Stones Trust Instrument of Protest" dated February 21, 2022, which discusses the cancellation of the account in September 2020 and the other events in the complaint; (2) other documents referencing the trust; (3) Forms 1099-MISC and 1099-NEC and other tax forms; and (4) various Wells Fargo documents including terms of use, the plaintiff's account application, summaries of his visits to the bank on September 3, 2020, and February 3, 2022, and Wells Fargo's April 6, 2022 letter to the plaintiff.[8]

The account application shows that on September 3, 2020, the plaintiff applied for a product called Wells Fargo Clear Access Banking. The application says that the bank asks for identifying information (name, address, date of birth, and other information) and reflects the plaintiff's information, including his date of birth.[9]

The summary of the September 3, 2020, visit describes the product: "An account designed for customers who do not write checks and want help managing their money without incurring overdraft or non-sufficient funds fees." It provides for a $5 monthly fee (unless the primary account holder is aged 13 to 24). The product includes a debit card. The summary reflects two Wells Fargo employees: Banker Marisol Guzman and Manager Ashley Curato, both at the San Leandro branch.[10]

---

[7] *Id.* at 6.

[8] *Id.* at 10–65. The court considers documents discussed in and attached to the complaint under the incorporation-by-reference doctrine. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). The court has no obligation to dig through attachments to a complaint to try to find a claim: the plaintiff must allege the facts in the claim itself. *Id.* (courts must "disregard facts that are not alleged on the face of the complaint or contained in documents attached to the complaint"). Nonetheless, because the court has an obligation to construe pro se pleadings liberally, and to give guidance for any amendment, the court considered the attachments.

[9] Account Appl. – *id.* at 44–45.

[10] Summary of Visit – *id.* at 46–47.

The Wells Fargo letter dated April 6, 2022, describes the result of its investigation of the plaintiff's complaint about the closure of his Clear Access checking account and why Wells Fargo closed the account on November 30, 2021:

> [T]he account was closed on November 30, 2021, because there had not been any qualifying, non-automatic transactions posted within the last two months. Our records show the last transaction was in September of 2021. On September 30, 2021, the monthly service fee for $5.00 assessed to your account, which left your account balance at –$2.24. The Consumer Deposit Account Agreement states an account with a zero balance may be closed by us on the fee period ending date without prior notification. To prevent closure by us without notification, an account must have a qualifying, non-automatic transaction posted within the last two months of the most recent fee period ending date. We have enclosed our *Consumer Deposit Account Agreement* for your review.[11]

The complaint has one claim: the defendants violated "the 1974 Privacy Act, 42 U.S.C. § 408." In the allegations that follow the charge, the plaintiff says the following.

Manager Ashley Curato and Banker Marisol Guzman are fiduciaries who must inform customers of any institutional violations pertaining to their account before termination. 5 U.S.C. § 552a establishes a code of fair information practices that governs the collection and use of information about individuals maintained in systems of records by federal agencies. There was nothing fair about their embarrassment of the plaintiff, who had to provide information already in the system. (He cites 42 U.S.C. § 408 again at this point.) The plaintiff complied with his obligations. Under the "Consumer Credit Protection Act," Wells Fargo and its employees were to give full disclosure of the terms and conditions of finance charges, and they made no effort to contact the plaintiff before closing the account.[12]

## STANDARD OF REVIEW

A complaint filed by a person proceeding in forma pauperis under 28 U.S.C. § 1915(a) is subject to a mandatory sua sponte review and dismissal by the court if it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant

---

[11] Letter – *id.* at 35–37 (included relevant provisions in the agreement called "Closing Accounts").
[12] Compl. – *id.* at 7–8.

who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir. 2001); *Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc). Under § 1915(e)(2), a court reviewing an in forma pauperis complaint must rule on its own motion to dismiss before directing the United States Marshals to serve the complaint under Federal Rule of Civil Procedure 4(c)(2). *Lopez*, 203 F.3d at 1126–27. "The language of § 1915(e)(2)(B)(ii) parallels the language of Federal Rule of Civil Procedure 12(b)(6)." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). The statute "is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

"Frivolousness" under § 1915(e) and failure to state a claim under Rule 12(b)(6) are distinct concepts.

"A complaint . . . is frivolous where it lacks an arguable basis either in law or in fact." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). The definition of frivolousness "embraces not only the inarguable legal conclusion, but also the fanciful factual allegation." *Neitzke*, 490 U.S. at 325. When determining whether to dismiss a complaint as "frivolous" under 28 U.S.C. § 1915(e)(2)(B)(i), the court has "the unusual power to pierce the veil of the complaint's factual allegations," meaning that the court "is not bound, as it usually is when making a determination based solely on the pleadings, to accept without question the truth of the plaintiff's allegations." *Denton*, 504 U.S. at 32. Frivolous claims include "claims describing fantastic or delusional scenarios, claims with which federal district judges are all too familiar." *Id.* "An in forma pauperis complaint may not be dismissed . . . simply because the court finds the plaintiff's allegations unlikely." *Id.* at 33. But "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Id.* Frivolous litigation "is not limited to cases in which a legal claim is entirely without merit. . . . [A] person with a measured legitimate claim may cross the line into frivolous litigation by asserting facts that are grossly exaggerated or totally false." *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1060–61 (9th Cir. 2007).

Under Rule 12(b)(6) and § 1915(e)(2)(B), a district court must dismiss a complaint if it fails to

state a claim upon which relief can be granted. Rule 8(a)(2) requires that a complaint include a "short and plain statement" showing the plaintiff is entitled to relief. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint need not contain "detailed factual allegations," but the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions"; a mere "formulaic recitation of the elements of a cause of action" is insufficient. *Twombly*, 550 U.S. at 555 (cleaned up).

In determining whether to dismiss a complaint under Rule 12(b)(6), the court is ordinarily limited to the face of the complaint. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). Factual allegations in the complaint must be taken as true and reasonable inferences drawn from them must be construed in favor of the plaintiff. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The court cannot assume, however, that "the [plaintiff] can prove facts that [he or she] has not alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.) (cleaned up).

Federal courts must construe pro se complaints liberally. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005). A pro se plaintiff need only provide defendants with fair notice of his claims and the grounds upon which they rest. *Hearns*, 413 F.3d at 1043. He need not plead specific legal theories so long as sufficient factual averments show that he may be entitled to some relief. *Id.* at 1041.

When dismissing a case for failure to state a claim, the Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez*, 203 F.3d at 1130 (cleaned up).

# ANALYSIS

The plaintiff claims that the Wells Fargo employees violated 42 U.S.C. § 408 on February 5, 2022, by asking — in connection with the alleged opening of a trust account — for identifying information about the plaintiff that was already in their system. This allegedly violates 5 U.S.C. § 552a, which the plaintiff contends establishes a code of fair information practices regarding the collection and use of information about individuals maintained in systems of records by federal agencies. The plaintiff contends that by asking him for the information, the defendants embarrassed him, which was not fair. The plaintiff also contends that before they terminated his checking account, the defendants should have notified him, which is required by the Consumer Credit Protection Act.

First, the plaintiff does not state a claim by alleging that requesting identification information twice violates 42 U.S.C. § 408 and 5 U.S.C. § 552a. Section 408 is a criminal statute that criminalizes Social Security fraud and does not provide a private right of action. *Cogdell v. Cogdell*, No. 3:17-cv-00795 (SRU), 2018 WL 705002, at *4–6 (D. Conn. Feb. 5, 2018); *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994) (the Court has refused to "infer a private right of action from a 'bare criminal statute'"). The plaintiff also says that embarrassing him was not fair, in violation of § 552a. That statute, the Privacy Act of 1974, establishes a code of fair information practices that governs the collection, maintenance, use, and dissemination of information about individuals maintained in systems of records by federal agencies. Given that Wells Fargo is not federally owned, the statute has no relationship to the events here and does not provide the plaintiff with a cause of action. *Unt v. Aerospace Corp.*, 765 F.2d 1440, 1447 (9th Cir. 1985) ("The private right of action created by the [Privacy Act, § 552a] is specifically limited to actions against agencies of the United States Government.").

There is no federal violation. The allegation — that the plaintiff had to give identifying information when opening a trust account in February 2022 — is an unremarkable requirement. The plaintiff had notice of that requirement, which is reflected on the account application for the September 2020 checking account.

Second, Wells Fargo closed an inactive account — thus avoiding recurring $5 monthly fees — which was permitted by the account agreement. The plaintiff contends that this violates the Consumer Credit Protection Act. That act, as the plaintiff recognizes in the complaint, mandates disclosures by banks, credit-card companies, and other lenders to consumers, such as on how fees are imposed. 15 U.S.C. § 1601(a). Here, the bank disclosed the $5 monthly fee in the account application. The bank also disclosed closure of the account in circumstances like these in the account agreement. The plaintiff cites no authority for the proposition that the bank had to notify him in advance before closing the account. *Cf. Thomas v. Wells Fargo Bank, N.A.*, No. 2:07-cv-01007-RCJ-RJJ, 2008 WL 11450626, at *7–8 (D. Nev. July 11, 2008) (the pro se plaintiff claimed that his account was closed without notice; the court observed that "there is no such cause of action" but noted that the plaintiff alleged that the bank told him that his account would be closed).

Because there are no federal claims, there is no federal-question jurisdiction over the plaintiff's complaint. Federal courts are courts of limited jurisdiction. *E.g., Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock W., Inc. v. Confederated Tribes of the Colville Rsrv.*, 873 F.2d 1221, 1225 (9th Cir. 1989). The plaintiff bears the burden of proving that his case is within federal jurisdiction. *See, e.g., In re Ford Motor Co./Citibank (S. Dakota), N.A.*, 264 F.3d 952, 957 (9th Cir. 2001) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)).

There is no basis for diversity jurisdiction either (assuming that the allegations somehow plausibly pleaded a state claim). For diversity jurisdiction, the plaintiff must be a citizen of a different state than the defendants, and he is not because he and the Wells Fargo employees, at least, reside in California.[13] *See* 28 U.S.C. § 1332.

For all of these reasons, the court dismisses the complaint.

---

[13] Compl. – ECF No. 1 at 1–2.

ORDER – No. 22-cv-06782-LB                9

**CONCLUSION**

If the plaintiff can cure the deficiencies that the court has identified, he may do so by filing an amended complaint by August 1, 2023. Alternatively, he may voluntarily dismiss the case by filing a one-page notice of voluntary dismissal, which will operate as a dismissal without prejudice. If the plaintiff does not file an amended complaint by August 1, 2023, the court will reassign the case to a district judge and recommend that the newly assigned judge dismiss the case.

**IT IS SO ORDERED.**

Dated: July 3, 2023

LAUREL BEELER
United States Magistrate Judge